# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NACIREMA DEMOLITION AND RECYCLING INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NEW JERSEY BUILDING LABORERS STATEWIDE BENEFIT FUNDS, <br><br> Defendant. | Civil Action No: 18-2692(SDW)(LDW) <br><br> **OPINION** <br><br><br> March 4, 2020 |
| NEW JERSEY BUILDING LABORERS STATEWIDE BENEFIT FUNDS, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> CLNV, LLC, <br><br> Third-Party Defendant. | |

**WIGENTON**, District Judge.

Before this Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendant/Third-Party Plaintiff New Jersey Building Laborers Statewide Benefit Funds' ("Funds") motion for summary judgment is **DENIED**. Plaintiffs/Counterclaim Defendants Nacirema Demolition and Recycling, Inc.

("NDR") and John Cherchio ("Cherchio") and Third-Party Defendant CLNV, LLC's ("CLNV") motion for Summary Judgment is **GRANTED**.

I. **BACKGROUND AND PROCEDURAL HISTORY**

Nacirema Environmental Services, Inc. ("NES"), a New Jersey corporation, was "engaged in the business of operating excavating contractor and demolitions services" from 1998 to 2011. (D.E. 61-7 Ex. J; D.E. 61-13 Ex. FF ¶ 15.)[1] While in business, the company employed anywhere from ten to fifty-five persons at a time and owned numerous pieces of heavy equipment. (D.E. 56-12 Tr. 92:20-93:25, 42:7-43:5.) NES was owned, in equal parts, by Cherchio, who served as NES's President and project manager, Cherchio's cousin, Anthony Novello ("Novello") who served as the company's Vice President, and Salvatore Carucci ("Carucci"), who handled sales and estimating. (*See* D.E. 61-6 Ex. D; D.E. 56-12 Tr. 40:23-41:9, 61:9-22, 63:15-64:25; D.E. 56-14; D.E. 56-15 Tr. 32:22-33:2, 39:25-40:3.) Between 1998 and 2009, NES leased a commercial property located at 211-217 West 5th Street in Bayonne, New Jersey from CLNV, a real estate holding company. (D.E. 61-13 Ex. GG ¶ 10; D.E. 61-10 Ex. BB.) From 1998 to 2013, CLNV was owned in equal parts by Cherchio, Novello, and Diane Larwa ("Larwa"). (D.E. 61-13 Ex. GG ¶ 5.) Beginning in 2014, CLNV was owned by Cherchio (22.2%), Novello (22.2%), Larwa (22.3%), and William Jerguson ("Jerguson") (33.3%). (D.E 56-15 Tr. 18:24-21:7; D.E. 61-10 Ex. BB at CLNV0008; D.E. 61-13 Ex. GG ¶ 10.)

On June 18, 2002, NES entered into a Short Form Agreement ("SFA") with the New Jersey Building Laborer Local Unions and District Councils ("Unions"). (D.E. 61-5 Ex. D.) By signing the SFA, NES agreed to be bound by the terms of the Unions' collective bargaining agreement

---

[1] Citations to "D.E." refer to the docket entries for the parties' motion papers, including briefs, affidavits, declarations, and statements of undisputed facts, and the documents attached to and referenced therein.

("CBA") which provided, in relevant part that: 1) NES make fringe benefit contributions to the Funds when it employed union members; 2) "questions or grievances involving the interpretation and application" of the CBA be resolved via arbitration; and 3) the agreement would "be binding on the parties hereto, their successors, administrators, executors and assigns." (*Id*.; D.E. 56-6 Articles XIV, XVIII, and XX.)[2] NES subsequently failed to make the required contributions and ceased operating in or about December 2010. (D.E. 61-7 Ex. J, M, N; D.E. 61-13 Ex. FF; D.E. 56-14.) In November 2010, NES entered into an Amended Consent Arbitration Award and Order ("Settlement"), in which it agreed to pay the Funds $531,616.87 in delinquent contributions. (D.E. 56-10.) NES made two payments and then defaulted on its obligations under the Settlement. (D.E. 61-5 Ex. F.) On August 9, 2011, as part of the wind-up of its business, NES assigned its assets pursuant to a Deed of Assignment for the Benefit of Creditors ("Assignment").[3] (D.E. 61-6 Ex. I.) Notice of the Assignment was provided to the Funds on or about September 12, 2011. (D.E. 61-7 Ex. J.)

Several years later, in June 2017, Cherchio and Anthony Romanello ("Romanello") formed NDR, an entity that provides demolition and recycling services. (D.E. 61-9 Ex. X; D.E. 61-3 Ex. FF ¶ 16; D.E. 56-12 Tr. 8:5-13, 20:23-21:9, 33:19-25, 35:2-10; D.E. 56-16 Tr. 7:15-8:13, 23:2-9, 26:2-27:6.) Cherchio and Romanello are each fifty-percent shareholders in NDR and serve as its sole officers. (D.E. 61-10 Ex. AA; D.E. 56-16 Tr. 7:15-8:14; D.E. 61-13 Ex. II ¶¶ 7-8.) In addition

---

[2] Signatories to the SFA "agree[d] to be bound by the conditions as set forth in the 1999 Building, Site and General Construction Agreement, which Agreement expires April 30, 2003, and the successor Agreement to the 1999 Building, Site and General Construction Agreement, herein referred to as the 2002 Building, Site and General Construction Agreement, which successor Agreement becomes effective May 1, 2002, both of which Agreements are incorporated herein as if set forth in full." (D.E. 61-5 Ex. D.) NES signed successor SFAs on November 19, 2007 and July 22, 2010. (*Id*.; D.E. 56-12 Tr. 68:2-70:14.)

[3] The Assignment identified the Funds as an unsecured creditor owed $523,079.78 and $70,369.84. (D.E. 61-6 Ex. G, H, I.)

to Cherchio and Romanello, NDR has only had two other employees. (D.E. 56-16 Tr: 8:12-9:7.) NDR acts primarily as a general contractor overseeing the work of subcontractors who provide their own equipment. (D.E. 56-12 Tr. 13:10-20, 16:12-17:24, 19:19-22:13.)

On or about January 17, 2018, after learning of NDR's existence and operations, the Funds initiated arbitration proceedings seeking 1) to bind NDR to the current CBA and hold it liable for NES's default on the Settlement, and 2) to have Cherchio held personally liable for the same. (*See* D.E. 61-7 Ex. Q.) NDR, Cherchio, and Romanello subsequently brought suit in this Court for declaratory judgment that they had no legal relationship to NES that would obligate them under the CBA. (D.E. 1.) The Funds then filed a third-party complaint against CLNV seeking a declaratory judgment that CLNV acted a single integrated enterprise with NES, NDR, Cherchio, and Romanello and, therefore, could be bound by the arbitration provisions in the CBA. (D.E. 21.) The Funds moved for summary judgment on October 25, 2019, and NDR, Cherchio, and CLNV[4] cross-moved on November 18, 2019. (D.E. 56, 61.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248.

---

[4] Romanello voluntarily dismissed his claims against the Funds and withdrew as a party on July 17, 2018. (D.E. 29, 31.)

A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate

the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

### III. DISCUSSION

The core question before this Court is whether NDR, Cherchio, and/or CLNV are subject to the CBA's arbitration provision and obligated to pay the 2010 Settlement. As a general matter, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Only parties to an arbitration agreement can be bound by its terms. *See, e.g.*, *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (noting that "[a]rbitration is strictly 'a matter of consent'") (internal citation omitted); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (recognizing that "a contract cannot bind a nonparty"); *N.J. Reg'l Council of Carpenters v. Heartland Dev. Co., Inc.*, Civ. No. 09-178, 2010 WL 1706961, at *3 (D.N.J. Apr. 27, 2010) (recognizing that "a party cannot be required to submit to arbitration any dispute which he has not agree[d] to so submit") (internal citations omitted). Here, only NES executed the SFA and agreed to be bound by the CBA's arbitration provision. As non-signatories, NDR, Cherchio, and CLNV did not and, as a result, are not subject to the CBA's terms.[5]

---

[5] The fact that Cherchio signed the 2007 SFA on behalf of NES does not make the arbitration provision enforceable against him, as it is clear that he was signing on behalf of NES. The SFA is directed to "The Undersigned Employer," contains a signature block "For the Employer," and requests the IRS Employer ID Number. (D.E. 61-5 Ex. D.) As a result, Cherchio did not become party to the contract and cannot be bound by its terms. *See, e.g.*, *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 445 (3d Cir. 1999) (determining that "an agent of a disclosed principal, even one who negotiates and signs a contract for her principal, does not become a party to the contract").

The Funds contend, however, that even though NDR and CLNV are not signatories, they can be compelled to comply with the CBA because they functioned as a single entity with NES. (*See* D.E. 56 at 22-26, 28-29.) Specifically, the Funds argue that NDR is an alter-ego or successor to, and CLNV acted as a single-employer with, NES. This Court addresses each argument in turn.

1. *Alter Ego Liability - NDR*

"The alter ego doctrine is meant to prevent employers from evading their obligations under labor laws and collective bargaining agreements through the device of making 'a mere technical change in the structure or identity of the employing entity . . . without any substantial change in its ownership or management.'" *N.J. Bldg. Laborers' Statewide Pension Fund v. Richard A. Pulaski Constr.*, 322 F. Supp. 3d 546, 554-55 (D.N.J. 2018) (citing *NLRB v. Hosp. San Rafael, Inc.*, 42 F. 3d 45, 51 (1st Cir. 1994)); *see also Southport Petroleum Co. v. N.L.R.B.*, 315 U.S. 100, 106 (1942) (stating that an alter ego relationship exists where there is a "purpose to avoid the old employer's labor obligations"). To determine whether the alter ego doctrine applies, a court must examine whether the companies have "substantially identical management, business purpose, operation, equipment, customers, and supervision, as well as ownership." *Stardyne, Inc. v. NLRB*, 41 F.3d 141, 146 (3d Cir. 1994). No one factor is determinative, rather, "the sum total of the factors, viewed together, help determine whether the two employers are 'in the same business in the same market.'" *N.L.R.B. v. Omnitest Inspection Servs., Inc.*, 937 F.2d 112, 118 (3d Cir. 1991) (internal citation omitted).

Examining all factors together, the Funds have failed to show that NDR is an alter ego of NES. *See Trs. Of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 197 (3d Cir. 2003) (noting that the burden of proof "rests with the party attempting to negate the existence of a separate entity"). First, there is no substantial identity of ownership or

management between NES and NDR. Although Cherchio is a common owner of both NES and NDR, he shared ownership in NES with Novello and Carucci and in NDR with Romanello. The record reflects that the owners of each company performed distinct roles with no one person controlling or dominating the others. For example, at NES, Cherchio managed the day-to-day operations of the company, while Novello oversaw the finances, and Carucci headed up sales and estimates. (*See* D.E. 61-6 Ex. D; D.E. 56-14; D.E. 56-12 Tr. 40:23-41:9, 61:9-22, 63:15-64:25; D.E. 56-14; D.E. 56-15 Tr. 32:22-33:2, 39:25-40:3.) At NDR, Cherchio again managed day-to-day operations while Romanello oversaw finances and human resources. (*See* D.E. 56-12 Tr. 13:13-20, 18:3-6, 19:19-24:22, 27:6-28:25, 94:1-95:3, 98:7-14; D.E. 56-16 Tr. 7:15-8:7, 10:12-11:15, 28:24-29:6; D.E. 61-13 Ex. FF ¶ 9.)[6] Second, the purpose and operation of the two companies is significantly different. NES provided excavating and demolition services for large companies, while NDR operates as general contractor for demolition and recycling services on a much smaller scale. (*See* D.E. 56-12 Tr. 8:5-9:21, 11:23-12:20; D.E. 61-13 Ex. FF ¶¶ 14, 16.) Third, NDR did not acquire and is not using NES's property, equipment, assets or employees, nor does NDR have customers in common with NES, which is unsurprising given the six-year gap between the wind-up of NES and the formation of NDR. (*See* D.E. 56-12 Tr. 96:22-97:23; D.E. 61-9 Ex. X, Z; D.E. 61-10 Ex. AA.) Without more, the record does not show that NDR is an alter-ego of the long-defunct NES.

---

[6] The fact that Novello is Cherchio's cousin and Romanello is Cherchio's brother-in-law, does not create a single ownership between the two companies, particularly given that Romanello and Novello are unrelated. *See I.B.E.W., Local Union No. 5 AFL-CIO v. Krater Servs., LLC*, 2011 WL 1136797, at *7 (W.D. Pa. Mar. 25, 2011) (noting that an analysis of ownership "does not stop once it is determined that a familial relationship exists between the owners of the entities involved").

*2. Successor Liability – NDR*

The doctrine of successorship liability "applies when a successor company purchases the assets of a company, but does not acquire the seller's liabilities." *N.J. Bldg. Laborer's*, 311 F. Supp. 3d at 555. "The successorship liability doctrine is invoked where the transfer of the assets undermines federal labor interests, such as failure to pay employee benefits to a union pension fund." *Id.* "Generally the doctrine may be applied where, under the totality of the circumstances, 'there is a "substantial continuity" between the enterprises.'" *Id.* (internal citations omitted). Here, the record does not establish substantial continuity between NES and NDR. Not only was NDR founded approximately six years after NES's assets were liquidated and the company ceased operations, but the Funds fail to identify purchase agreements or documents of any kind that show that NDR purchased NES's assets. As such, the successorship liability doctrine is inapplicable.

*3. Single Employer Liability – CLNV*

The doctrine of single employer liability is intended to impose "liability for labor infractions where two nominally independent entities do not act under an arm's length relationship." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 486 (3d Cir. 2001) (citing *Murray v. Miner*, 74 F.3d 402, 405 (2d Cir. 1996)). "A 'single employer' relationship exists where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a "'single employer.'" *N.L.R.B. v. Browning-Ferris Indus. of Pennsylvania, Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982). To determine if the imposition of single employer liability is appropriate, courts consider: "(1) functional integration of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership." *Id.* Although courts must consider all four factors, "[t]he critical criterion is centralized control over

labor relations." *Kieffer v. CPR Restoration & Cleaning, Servs., LLC*, 733 Fed. App'x 632, 635 (3d Cir. 2018).

Here, although Cherchio and Novello are common owners of NES and CLNV, the remaining ownership interests differ. (*See* D.E. 61-10 Ex. BB at CLNV0008; D.E. 61-13 Ex. GG ¶ 5; D.E 56-15 Tr. 18:24-21:7.) The two companies have no integrated operations, as CLNV exists solely as a real estate holding company which has never provided excavation, demolition or other construction services. (*See* D.E. 56-12 Tr. 83:17-85:15; D.E. 56-15 6:20-22, 8:12-9:14, 14:4-9; D.E. 61-11 Ex. CC, DD, GG ¶ 7.) CLNV's sole connection to NES was as a landlord. (*See* D.E. 56-15 Tr. 24:18-26:20, 29:18-20, 34:19-22, 36:14-16.) In addition, CLNV has no employees, and therefore, shared none with NES. (D.E. 56-15 Tr. 6:13-17; D.E. 61-13 Ex. GG ¶ 4.)[7] As a result, the record does not support the imposition of single employer liability on CLNV.

It being clear that NES is the sole signatory to the SFA, and there being no genuine issue of material fact as to whether NDR, Cherchio and/or CLNV can be held liable for NES's obligations pursuant to the SFA and the underlying CBA, NDR, Cherchio, and CLNV's motion for summary judgment shall be granted and the Funds' motion for summary judgement will be denied.

## IV. CONCLUSION

For the reasons set forth above, the Funds' motion for summary judgment is **DENIED**. NDR, Cherchio and CLNV's motion for Summary Judgment is **GRANTED**. An appropriate order follows.

                                    ___/s/ Susan D. Wigenton_____
                                    **SUSAN D. WIGENTON, U.S.D.J.**

---

[7] CLNV has never entered into any transactions with NDR. (*See* D.E. 56-12 Tr. 89:11-25; D.E. 56-15 Tr. 36:14-16; D.E. 61-11 Ex. GG ¶ 14.)

10

Orig: Clerk
cc: Leda D. Wettre, U.S.M.J.
Parties